UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,               )<br>                                                              )<br>                        Plaintiff,           )<br>                                                              )<br>v.                                                         )<br>                                                              )<br>STEPHEN LEE SELDON, M.D., and    )<br>DEBORAH MARTINEZ SELDON,       )<br>                                                              )<br>                        Defendants.      )<br>_____) | 2:07-cr-0135-KJD-LRL<br>MOTION TO SUPPRESS (#67) |

## REPORT & RECOMMENDATION

The defendants, Stephen Lee Seldon, M.D. and Deborah Martinez Seldon, are each under indictment on fourteen counts of Mail Fraud, a violation of 18 U.S.C. §§ 1341 and 2, and one count of Misbranding a Drug While Held for Sale, a violation of 21 U.S.C. §§ 331(k) and 333(a)(2), and 18 U.S.C. § 2. Defendants have filed a Motion to Suppress (#67), contending that all evidence seized at their place of business should be suppressed because of a faulty search warrant. The government filed a response (#72). No reply was filed. Having considered the motion and opposition, the undersigned submits this Report and Recommendation.

### THE FACTS

Based on the exhibits attached to the parties' papers, the court finds that the following facts have been established by a preponderance of the evidence.

On June 8, 2005, federal agents executed a search warrant at A New You Medical Aesthetics ("A New You"), a medical practice located at 4440 South Eastern Avenue in Las Vegas, Nevada. Defendant Stephen Lee Seldon, M.D. is a licensed physician who practices at A New You. Indictment (#1) at ¶¶ 2, 4. His wife, Deborah Martinez Seldon, is the office manager and, as such, handles financial matters at A New You. *Id.* at ¶ 3.

**A. The Warrant and Accompanying Affidavit**

The agents conducted the search pursuant to a search warrant (the "Warrant") signed by the undersigned Magistrate Judge. Exh. A to Opp'n (#72). Appended to the Warrant were a pair of attachments. *Id.* at 6-10. Attachment A described the premises to be searched. *Id.* at 6. Attachment B included a list of items to be seized. *Id.* at 7-10. Both were expressly incorporated into the Warrant by reference, including, Attachment B:

> Affidavit(s) having been made before me by Special Agent Clifford D. Wenzek, who has reason to believe that . . . on the premises known as: *See Attachment A, which is incorporated herein and made a part hereof*, in the District of Nevada there is now concealed a certain person or property, namely: *See Attachment B which is incorporated herein and made a part hereof* . . . .

*Id.* at 4 (emphasis added).

Attachment B authorizes the seizure of four (4) categories of documents. *Id.* at 7. All of the items to be seized are restricted in time. *Id.* The first line of Attachment B contains the limitation: "[f]or the period from October 15, 2003 thru the present." *Id.* Three (3) of the four (4) categories are limited by reference to Botulinum derived medications. *Id.* Paragraph (1) of Attachment B authorizes the seizure of non-FDA approved neurotoxin itself, but not any documents relating to that product. *Id.* Paragraph (2) authorizes the seizure of various records, including "payment records [or] sales records," but only as such records relate to the purchase, sale and use of Botulinum-derived medications or products. *Id.* Paragraph (4) authorizes the seizure of records relating to "patients who received botulinum toxin injections [from October 14, 2003 through present]." *Id.*

Paragraph (3), which is also restricted by time, limits agents to the seizure of records "reflect[ing], refer[ring] or relat[ing] to" six (6) known sources of non-FDA approved neurotoxin. *Id.* All six (6) are identified in the Search Warrant Affidavit (the "Affidavit") as supplying the defendants with the false neurotoxin they used in their scheme to defraud. *See* Exh. B to Opp'n (#72). The Warrant expressly incorporates the Affidavit:

> I am satisfied that the affidavit(s), *which are attached to and incorporated herein* and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and established grounds for the issuance of this warrant. *Said Affidavit is attached hereto and incorporated by reference.*

Exh. A to Opp'n (#72) at 4 (emphasis added).

The Affidavit sets forth probable cause to believe that Stephen Lee Seldon "has been injecting patients with misbranded and unapproved new drugs as a substitute for the licensed biological product and prescription drug known as Botox® Cosmetic." Exh. B to Opp'n (#72) at 14 ¶ 2. It contains multiple references to the statutes under investigation. The signature page of the Affidavit reads as follows:

> Based on the foregoing, along with my training, experience and consultation with others, I respectfully submit that there is probable cause to believe that the items described in Attachment B are currently located at the premises of A NEW YOU MEDICAL AESTHETICS, 4440 South Easter Avenue, Las Vegas Nevada 89119, as described within Attachment A, *and that those items constitute evidence or instrumentalities of the crimes of: the illegal introduction of a misbranded drug into interstate commerce with the intent to defraud and mislead patients, in violation of 21 U.S.C. §§ 331(a) & 333(a)(2); the receipt in interstate commerce of a misbranded drug, and the delivery thereof for pay, with the intent to defraud and mislead customers, in violation of 21 U.S.C. § 331(c); the doing of an act which causes a drug to be misbranded while it is held for sale and after its shipment in interstate commerce, in violation of 21 U.S.C. § 331(k); Mail Fraud, in violation of 18 U.S.C. § 1341; and conspiracy to introduce a misbranded drug into interstate commerce with the intent to defraud and mislead patients, in violation of 18 U.S.C. § 371.*

*Id.* at 33 ¶ 1 (emphasis added). (The signatures of Special Agent Wenzek and the undersigned follow on the same page.) These statutes are also recited in the third paragraph of the Affidavit:

> As set forth below, there is probable cause to believe that Dr. Seldon has violated Title 21, United States Code, Section 331(a), by causing the introduction of a misbranded drug into interstate commerce with the intent to defraud and mislead; Title 18 United States Code, Section 1341, by using the mail to help perpetrate a fraud on his patients; and Title 18, United States Code, Section 371, by conspiring with others to commit the above mentioned

3

> violations. Specifically, Dr. Seldon purchased an unapproved and unlicensed Botulinum Neurotoxin Type A from a source in Arizona and fraudulently administered it to his patients, representing it to them as Botox® Cosmetic, a biological product licensed by the U.S. Food and Drug Administration.

*Id.* at 14 ¶ 3.

The Affidavit also contains a discussion of the Food, Drug and Cosmetic Act, 21 U.S.C. 301 *et seq.*, including an explanation of what constitutes a drug, when a drug is considered to be "misbranded," and why Stephen Lee Seldon's conduct constituted misbranding. *Id.* at 14-17 ¶¶ 1-8. The statutes alleged to have been violated are restated at the end of this section. *Id.* at 17 ¶ 10.

### B. Execution of the Warrant

Agents executed the Warrant on June 8, 2005. Exh. C to Opp'n (#72) at 40 ¶ 3. The night before the search, Special Agent Wenzek organized a briefing at the Office of Immigration and Customs Enforcement in Las Vegas. *Id.* at ¶ 4. Fourteen (14) agents, all of whom were going to participate in the search the next day, were present at the briefing. *Id.* Either prior to or at the briefing, every agent was required to read the Warrant and the accompanying Affidavit. *Id.*

On the day of the search, the agents participated in a "staging" meeting. *Id.* at ¶ 5. At the staging meeting, which took place immediately prior to the search a short distance from A New You, Special Agent Wenzek distributed an additional copy of Attachment B (Items to be Seized) to all fourteen (14) agents. *Id.* The agents traveled together, in different cars, to the search site. *Id.* After a "knock and announce," agents gained access to A New You. *Id.* at ¶ 6. Upon gaining entry, Special Agent Wenzek showed a copy of the Warrant to the three (3) office employees present at A New You. *Id.* at 41 ¶ 7. Special Agent Wenzek did not serve a copy of the Affidavit because it had been sealed by court order. *Id.* He had a copy of the Affidavit present at the search site. *Id.* at ¶ 9. It was available to the agents conducting the search, although none asked to review the Affidavit while they searched. *Id.*

1        At approximately 9:15 a.m., about thirty-five (35) minutes after gaining entry into A New
2 You, Special Agent Wenzek spoke to Stephen Lee Seldon by telephone. *Id.* at ¶ 10. Stephen
3 Lee Seldon indicated that he intended to travel to A New You immediately, but he never
4 arrived. *Id.* Approximately twenty (20) minutes after that phone call, an attorney purporting
5 to represent Stephen Lee Seldon arrived at A New You. *Id.* at ¶ 11. Special Agent Wenzek
6 provided the attorney with a copy of the Warrant, including Attachment A and Attachment B.
7 *Id.* Neither the attorney, nor anyone else affiliated with A New You, questioned the scope of
8 the Warrant or the search that day. *Id.* The search lasted approximately six (6) hours. *Id.* at ¶
9 12.

## DISCUSSION

11       Defendants seek the suppression of evidence seized at their place of business on grounds
12 that the Warrant was "unconstitutionally over broad on its face." Mot. (#67) at 2. Specifically,
13 defendants argue that there are three flaws in the Warrant: (1) its description of the items to be
14 seized is vague; (2) it fails to name the precise criminal activity allegedly violated by
15 defendants; and (3) it fails to include a date range limiting the items to be seized. *Id.*

16       The Fourth Amendment requires search warrants to "particularly describe[ ] the place
17 to be searched, and the persons or things to be seized." U.S. Const. amend. IV. While a search
18 warrant must be sufficiently particular to prevent "a general, exploratory rummaging in a
19 person's belongings, it need only be reasonably specific, rather than elaborately detailed."
20 *United States v. Rude*, 1996 U.S. App. LEXIS 23601, at *35 (9th Cir. May 6, 1996) (internal
21 quotation marks and citations omitted). "The description must be specific enough to enable the
22 person conducting the search to identify the things authorized to be seized." *United States v.*
23 *Spilotro*, 800 F.2d 959, 963 (9th Cir.1986) (quoting *United States v. McClintock*, 748 F.2d 1278,
24 1282 (9th Cir. 1984)). The degree of specificity required "varies depending on the
25 circumstances of the case and the type of items involved." *Spilotro*, 800 F.2d at 963; *see also*
26 *Andresen v. Maryland*, 427 U.S. 463, 482 n.10 (1976) (recognizing that the nature and

complexity of the fraudulent scheme informs level of particularity required). "The proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture in the investigation." *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004) (citation omitted).

In determining whether a warrant is sufficiently particular, the Ninth Circuit considers the following factors:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Spilotro*, 800 F.2d at 963 (internal citations omitted).

Defendants do not argue that probable cause to seize evidence of their alleged scheme to defraud was absent. Thus, the first factor is satisfied. Nor is the Warrant unreasonably broad concerning the other factors. The items to be seized set forth in Attachment B to the Warrant are limited to four (4) discrete categories. *See* Exh. A to Opp'n (#72) at 7. Three (3) of the four (4) categories are limited to Botulinum-derived medications: Paragraph (1) of Attachment B authorizes the seizure of non-FDA approved neurotoxin itself, but not any documents relating to that product. *See id.* Paragraph (2) authorizes the seizure of various records, including "payment records [or] sales records," but only to the extent that such records relate to the purchase, sale and use of Botulinum-derived medications or products. Paragraph (4) authorizes the seizure of records relating to "patients who received botulinum toxin injections [from October 15, 2003 through present]." By limiting the Warrant to items relating to Botulinum-derived medications or products,[1] whether Botox® or its non-FDA substitute, the agents'

---

[1] A New You advertised other cosmetic products and procedures, including, but not limited to, Restalyne (a cosmetic product commonly used for lip augmentation), mesotherapy (the injection of pharmaceutical and homeopathic medications to reduce fat under the skin), microdermabrasion (the partial or complete removal of the dead outermost surface

6

1 | discretion in executing the Warrant was sufficiently curtailed.

2 |     Paragraph (3) also is sufficiently particular. It limits the agents to the seizure of records
3 | "reflect[ing], refer[ring] or relat[ing] to" six (6) known sources of non-FDA approved
4 | neurotoxin. *Id.* at 7 ¶ 3. All six (6) are identified in the Affidavit as supplying defendants with
5 | the fraudulent neurotoxin they allegedly used in their scheme to defraud. Exh. B to Opp'n (#72)
6 | at 16, 22-31. By limiting the seizure of records to these six (6) sources, and not to "any source
7 | of cosmetic products," the Warrant is sufficiently particular.

8 |     Regarding defendants' suggestion that the Warrant was overbroad because it failed to
9 | "identify a relevant date range for the evidence to be seized," *see* Mot. (#67) at 2; *see also id.*
10 | at 4 ("Conspicuously absent . . . was any meaningful and appropriate discussion of limited date
11 | ranges on the records to be seized."), the court notes that the first words appearing on
12 | Attachment B (Items to be Seized) are "[f]or the period from October 15, 2003 thru the
13 | present[.]" Exh. B to Opp'n (#72) at 35. Attachment B, in turn, is specifically incorporated into
14 | the Warrant by reference:

15 |         Affidavit(s) having been made before me by Special Agent Clifford D. Wenzek, who has reason to believe that . . . on the
16 |         premises known as: See Attachment A, which is incorporated herein and made a part hereof, in the District of Nevada there is
17 |         now concealed a certain person or property, namely: See Attachment B which is incorporated herein and made a part hereof
18 |         . . . .

19 | Exh. A to Opp'n (#72) at 4. The date range is reasonable in light of the timing of the events
20 | uncovered by the investigation. *See* Exh. B to Opp'n (#72) at ¶¶ 40-62. Hence, this court finds
21 | defendants' argument to be without merit.

22 |     Even if the Warrant lacked particularity, the good faith exception to the exclusionary rule
23 | applies. "Evidence seized pursuant to a facially valid search warrant which later is held to be
24 | invalid may nevertheless be admissible if officers conducting the search acted in good faith and

25 | _____

26 | of the skin by light mechanic abrasion), and blepharoplasty (surgical reshaping of the eyelids). Exh. D to Opp'n (#72).

in reasonable reliance on the warrant." *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995) (citing *United States v. Leon*, 468 U.S. 897, 926 (1984)). The government bears the burden of proving that reliance upon a facially valid warrant was objectively reasonable. *Id.* (citing *United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir. 1986)). The exception does not apply when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923 (citation omitted). In other words, where "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 923 n.23.

The Warrant incorporates a detailed, twenty-one (21) page Affidavit containing information obtained through an investigation lasting approximately seven (7) months. *See Michaelian*, 803 F.2d at 1047 (discussing importance of extensive investigation in establishing good faith). As noted above, the Affidavit includes an explanation of the specific dates that defendants allegedly purchased non-FDA approved neurotoxin, details the labeling on those purchases, and describes the amounts paid for the product. *See* Exh. B to Opp'n (#72) at ¶¶ 40-43. It also describes defendants' promotion of the non-FDA approved neurotoxin as Botox®, as well as Allergan, Inc.'s (the manufacturer of Botox®) efforts to stop defendants from promoting as Botox® a product that it suspected was a non-FDA approved substitute. *Id.* at ¶¶ 53, 60.

The Warrant itself is similarly detailed. Attachment B, incorporated by reference into the Warrant, limits the seizure of documents to "the period from October 15, 2003 thru the present." Exh. A to Opp'n (#72) at 7. The items to be seized are listed in four (4) separate categories of documents. *Id.* Three (3) of those categories are limited by reference to a single cosmetic product—Botulinum derived medications. *Id.* The fourth is limited to six (6) known sources of those products. *Id.* All four (4) categories are amply supported by probable cause. *Id.*

8

**RECOMMENDATION**

Based on the foregoing, it is the recommendation of the undersigned U.S. Magistrate Judge that the Motion to Suppress (#67) should be denied.

DATED this 14th day of August, 2008.

*/s/ Lawrence R. Leavitt*
_____
LAWRENCE R. LEAVITT
UNITED STATES MAGISTRATE JUDGE